In re GHALI.

[Cite as *In re Ghali* (1992), 83 Ohio App.3d 460.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–825.

Decided Nov. 5, 1992.

*Sirkin, Pinales, Mezibov & Schwartz,* H. *Louis Sirkin* and *Edmund J. McKenna,* for appellant Nabil N. Ghali, M.D.

*Lee Fisher,* Attorney General, and *Lisa A. Sotos,* Assistant Attorney General, for appellee Ohio State Medical Board.

BOWMAN, Judge.

In June 1990, the Ohio State Medical Board ("the board") initiated disciplinary proceedings against appellant, Nabil N. Ghali, M.D., based upon allegations that appellant had violated R.C. 4731.22(A) and (B)(5).[1]

After conducting a November 1990 hearing, the board's hearing examiner issued a report and recommendation in which she found a number of violations of the relevant statutes. The facts which comprised the disciplinary action against appellant are as follows.

In 1983, appellant's Kentucky license to practice medicine was revoked, based upon a four-count misdemeanor conviction in Kentucky in 1982. Based upon the facts underlying the criminal conviction, appellant's Ohio license to practice medicine was indefinitely suspended in 1984. In 1985, appellant's Utah license to practice medicine and to prescribe and administer controlled substances was revoked, based upon a finding that appellant had fraudulently failed to indicate the Kentucky and Ohio disciplinary actions on his application for renewal of his Utah license.

In 1986, appellant applied to restore his Ohio license, certifying that the statements therein were true. In that application, appellant mentioned the Kentucky proceedings, but failed to indicate that he had a Utah license or that it had been revoked. When the board inquired as to why appellant failed to mention the Utah license, appellant answered that the Utah license was missing from his files and that his failure to mention the license was unintentional. The board did not become aware that the Utah license had been revoked until some

---

1. R.C. 4731.22(A) reads as follows:

"The state medical board, pursuant to an adjudicatory hearing under Chapter 119. of the Revised Code and by a vote of not less than six of its members, may revoke or may refuse to grant a certificate to a person found by the board * * * to have committed fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board."

R.C. 4731.22(B)(5) states that:

"(B) The board, pursuant to an adjudicatory hearing under Chapter 119. of the Revised Code and by a vote of not less than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:

" * * *

"(5) Soliciting patients or publishing a false, fraudulent, deceptive, or misleading statement.

"As used in this division, 'false, fraudulent, deceptive, or misleading statement' means a statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived."

time later.[2]  Also in 1986, appellant applied to renew his Ohio license for the 1987–1988 biennial registration period.  On his renewal card, appellant denied that his license to prescribe controlled substances in any state had been surrendered when, in fact, his Utah license to do so had been revoked.

In December 1986, in 1987, and in 1988, respectively, appellant's licenses to practice medicine in New York, Florida and California were revoked.  Despite this, in September 1988, appellant applied for renewal of his Ohio license for the 1989–1990 biennium and, on the renewal form, denied any disciplinary action by a state licensing agency during the previous biennium.

In March 1989, appellant applied to the Mercer County Joint Township Community Hospital in Coldwater, Ohio, for appointment to the medical staff.  On the application, appellant denied that his license to practice medicine in any jurisdiction had ever been limited, suspended or revoked.  Appellant also misrepresented the number of malpractice actions which had been initiated against him and which he had settled.

In April 1989, appellant applied to the Joint Township District Memorial Hospital in St. Marys, Ohio, for appointment to the medical staff.  Appellant again denied that his license to practice medicine had been limited, suspended or revoked in any state.  Appellant also denied that his narcotics registration had ever been suspended or revoked, and again made misrepresentations regarding malpractice actions against him.

In January 1990, appellant applied to the United States Department of Justice, Drug Enforcement Administration ("DEA") for registration under the Controlled Substances Act of 1970.  In the application, appellant denied that he had ever had a state professional license or controlled substance registration revoked, suspended, denied, restricted or placed on probation, even though appellant's license to prescribe controlled substances had been revoked by Utah and his licenses to practice medicine had been revoked by Utah, Kentucky, California, New York and Florida.

In November 1989, appellant applied to Southwestern General Hospital, Middleburg Heights, Ohio, for hospital privileges.  On the application, appellant denied that any disciplinary actions had been taken or were pending against him by any state licensing board, and denied that his license to practice medicine had ever been limited, suspended or revoked.  Also, in November 1989, appellant applied to Physician Staffing, Inc., denying on the application that his license to practice medicine had ever been suspended or revoked. .

---

2.  Although the hearing examiner's findings do not specifically indicate that appellant's application to restore his Ohio license was successful, we infer this from the remaining facts.

Based upon these findings, the hearing examiner concluded that appellant had violated R.C. 4731.22(A) and (B)(5) because he:

" * * * [R]epeatedly and intentionally misrepresented and omitted facts regarding disciplinary actions and malpractice settlements against him. He made fraudulent misrepresentations to state licensing boards, the [DEA], hospitals, and a potential employer. At hearing, [appellant] offered no explanation for his actions. Nevertheless, through counsel, he expressed a desire to continue as a licensee of this Board and willingness to submit to whatever conditions or limitations the Board might deem fit to impose. This Board has in the past imposed stringent sanctions in cases involving isolated incidents of fraud. In this case, the evidence shows a long-term pattern of repeated fraud. Such behavior on [appellant's] part provides no foundation for a continued relationship between him and this Board, which is charged with regulating licensees and protecting the public."

The hearing examiner then recommended that appellant's certificate to practice medicine and surgery in the state of Ohio be revoked. The board voted to adopt the report and recommendation of the hearing examiner, thereby revoking appellant's license, and appellant appealed to the Franklin County Court of Common Pleas, which affirmed the board's decision.

Appellant now appeals to this court, raising the following as error:

"First Assignment of Error

"The common pleas court erred in affirming the decision of the board because all the allegations of misconduct prior to June 13, 1989, were barred by the applicable statute of limitations, R.C. § 2305.11(A).

"Second Assignment of Error

"The common pleas court erred in determining that Dr. Ghali violated R.C. 4731.22(B)(5)."

In reviewing a decision of an administrative agency, pursuant to R.C. 119.12, the court of common pleas must determine whether the decision is supported by reliable, probative and substantial evidence and is in accordance with law. *Arlen v. State* (1980), 61 Ohio St.2d 168, 15 O.O.3d 190, 399 N.E.2d 1251. In determining whether the board's order was supported by reliable, probative and substantial evidence, the trial court was required to give due deference to the decision of the board since that body was in the best position to review and weigh the evidence presented. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. When reviewing an order of the court of common pleas which determined an appeal from an administrative agency based upon the manifest weight of the evidence, this court's scope of

review is limited to determining whether the common pleas court abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264. An abuse of discretion connotes more than an error of judgment; it implies a decision which is without a reasonable basis or one which is clearly wrong. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280.

Appellant's first assignment of error charges that the common pleas court abused its discretion in determining that the revocation of his license was in accordance with law, since the board's action against him was time-barred. According to appellant, R.C. 2305.11 required the board to have initiated disciplinary proceedings against appellant within one year of the misconduct alleged.

R.C. 2305.11(A) provides:

" * * * [A]n action upon a statute for a penalty or forfeiture, shall be commenced within one year after the cause of action accrued * * *."

In *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630, the Ohio Supreme Court held, at paragraphs two and three of the syllabus:

"2. The government cannot be estopped from its duty to protect public welfare because public officials failed to act as expeditiously as possible.

"3. Laches is generally no defense to a suit by the government to enforce a public right or to protect a public interest."

The court further stated, 51 Ohio St.3d at 146, 555 N.E.2d at 633:

"The board cannot be estopped from its duty to protect the public welfare because it did not bring a disciplinary action as expeditiously as possible. * * * If a government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined. * * * To hold otherwise would be to grant defendants a right to violate the law. * * *

" * * *

"It is well-settled that in the absence of a statute to the contrary, laches is generally no defense to a suit by the government to enforce a public right or protect a public interest. * * * The principle that laches is not imputable to the government is based upon the public policy in enforcement of the law and protection of the public interest. * * * To impute laches to the government would be to erroneously impede it in the exercise of its duty to enforce the law and protect the public interest. We therefore reject the defendants' arguments."

This court has found *Frantz* to be applicable to State Medical Board proceedings. *Singer v. State Med. Bd.* (Sept. 26, 1991), Franklin App. No. 90AP–1204, unreported, 1991 WL 224968.

■ Appellant attempts to distinguish *Ohio Dept. of Transp. v. Sullivan* (1988), 38 Ohio St.3d 137, 527 N.E.2d 798, syllabus, which similarly held that, absent express statutory provision to the contrary, the state is exempt from the operation of a generally worded statute of limitations. According to appellant, the board is a subdivision of the state and, therefore, under *Sullivan,* the rule exempting the state from application of a statute of limitations does not apply. *Id.* at 139, 527 N.E.2d at 799.

It is beyond cavil that the board is not a subdivision of the state but an agency of the state. *E.g., Bouquett v. Clemmer* (S.D. Ohio 1985), 626 F.Supp. 46, 48 ("Without question, * * * the State Medical Board [is an] agenc[y] of the State of Ohio, as opposed to [a] political [subdivision]."). See, also, R.C. 2743.01(A) (defining "state" as "the state of Ohio, including, but not limited to, * * * all departments, *boards,* offices, commissions, agencies, institutions, and other instrumentalities." [Emphasis added.] ). Thus, unless there is a specific statutory provision requiring the board to initiate disciplinary proceedings within a certain time frame, the board's action against appellant was not time-barred.

■ Appellant's argument that R.C. 2305.11 provides just such a statutory provision is not well taken. R.C. Chapter 2305 also addresses jurisdiction, with R.C. 2305.01 giving original jurisdiction to the courts of common pleas for all cases in which the amount in dispute exceeds statutory limits for county and municipal courts. R.C. 2305.01 is unrelated to the appellate jurisdiction of the Franklin County Court of Common Pleas over appeals from the board pursuant to R.C. 119.12.

■ Appellant additionally argues that, if R.C. 2305.11 does not apply, R.C. Chapter 4731 is unconstitutional because it grants the common pleas court unlimited discretion. Appellant apparently alleges that, because R.C. Chapter 4731 lacks a statute of limitations, the board can arbitrarily and capriciously determine which physicians to prosecute.

■ This argument was first raised in appellant's reply brief in the court of common pleas and, therefore, was not timely. Moreover, appellant has not specifically demonstrated how the lack of a statute of limitations renders the chapter unconstitutional, or results in an abuse of the board's discretion. Finally, we are required to presume the constitutionality of legislative enactments and, where it is possible to determine an issue without addressing a constitutionality argument, we must do so.

Appellant's first assignment of error is overruled.

Appellant's second assignment of error contends that the trial court erred in determining appellant violated R.C. 4731.22(B)(5) since, according to appellant, that statute regulates only fraud or misrepresentation perpetrated against a patient, and the board never attempted to show that appellant lied to a patient.

This argument is not well taken, since the statute clearly states that a violation occurs when a physician solicits a patient *or* publishes a false, fraudulent, deceptive or misleading statement. The use of the conjunction "or" indicates that appellant need not have both solicited a patient and published a false statement to be found in violation of the statute, nor did appellant need to have lied only to a patient. Appellant's second assignment of error is overruled.

We conclude that the court of common pleas did not abuse its discretion in finding reliable, probative and substantial evidence to support the decision of the board and the decision was in accordance with law. Appellant's first and second assignments of error are overruled, and the decision of the court of common pleas is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, P.J., and PETREE, J., concur.